[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2005
THOMAS  K. KAHN
CLERK

_____

No. 05-12678
Non-Argument Calendar

_____

D. C. Docket No. 03-21728-CV-AJ

MONTGOMERY BLAIR SIBLEY,

Plaintiff-Appellant,

versus

MAXINE COHEN LANDO,
ALAN R. SCHWARTZ,
MARIO P. GODERICH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(**November 29, 2005**)

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Montgomery Blair Sibley appeals the district court's dismissal of his state tort and federal civil rights claims against Judge Maxine Cohen Lando, Judge Alan R. Schwartz, and Judge Mario P. Goderich as well as the district court's denial of his motion to amend his complaint. The district court dismissed the claims because state and federal judicial immunity prevents the collateral review he seeks, and it denied the motion to amend because the change would not have created claims that could survive the judicial immunity defense. We AFFIRM.

## I. BACKGROUND

In the underlying state court action, which we expressly do not review for the substance of its decision, Sibley was confined for failure to pay child support in the amount of $100,000. See Sibley v. Sibley, 833 So. 2d 847 (Fla. Dist. Ct. App. 2002). Continuing what has become a multi-headed leviathan of meritless litigation, Sibley sued his trial and appellate state court judges in federal court on state and federal causes of action for $10 million each.[1] The district court

---

[1] By judicial decree, Sibley has been barred from self-representation in Florida state courts as a result of his vexatious litigation. See Sibley v. Sibley, 885 So. 2d 980, 988 (Fla. Dist. Ct. App. 2004). Sibley seems unfazed by sanctions against his person, so the Florida courts decided that his frivolous suits could continue only if Sibley could convince another lawyer to take his case. Id. Sibley also has a history of abusive litigation in federal courts. See Sibley v. Wilson, 2004 U.S. Dist. 22205 (S.D. Fla. 2004) (listing cases). The latest of these was to sue the Justices of the United States Supreme Court, in their individual capacities, for denying certiorari in his case. See Sibley v. United States Supreme Court, 136 F. App'x 252 (11th Cir. 2005). A similar remedy to that employed in Florida courts might be appropriate, upon motion to a district

2

dismissed, because, given the defense of judicial immunity, Sibley failed to state a claim.

On appeal, Sibley argues that Judge Lando was not entitled to judicial immunity as to the state law claims of unlawful imprisonment, because she had lost jurisdiction over his case when he filed seven affidavits seeking her recusal, and her subsequent incarceration of him was, therefore, unlawful. Sibley asserts that, under Fla. Stat. § 38.10, a litigant need only file an affidavit stating that he fears he will not receive a fair trial in order to bar a judge from proceeding. He filed seven such motions and affidavits, which he argues barred Judge Lando from proceeding in his case and rendering a judicial immunity defense unavailable to her. In his eighth claim, Sibley reiterates that Judge Lando lost jurisdiction when she failed to rule on one of his motions to disqualify. Sibley contends that, because Judge Lando exceeded her jurisdiction, she is ineligible for judicial immunity from his § 1983 claims.

As to Judges Schwartz and Goderich, Sibley argues that these appellate judges acted in the complete absence of jurisdiction. Sibley also contends that Judges Schwartz and Goderich committed "non-judicial" acts outside the scope of their jurisdiction by (1) soliciting evidence during oral argument outside the record

---

court, given Sibley's history of vexatious litigation. This court has enforced similar sanctions in the past. See, e.g., Martin-Trigona v. Shaw, 986 F.2d 1384, 1386-87 (11th Cir. 1993).

on appeal, and (2) "fabricating" evidence not contained in the record. Sibley argues that these actions violated Florida Rule of Appellate Procedure 9.200 and, thus, that the judges were not entitled to judicial immunity.

## II. DISCUSSION

We review motions to dismiss for failure to state a claim de novo, and we accept the allegations in the complaint as true, construing them in a light most favorable to the plaintiff.[2] Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004) (citing Fed. R. Civ. Pro. 12(b)(6)). Motions to dismiss are only granted "when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. "We review the denial of a motion to amend a complaint for an abuse of discretion standard." Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1300 (11th Cir. 2003).

A. Judicial Immunity Under Federal Law

---

[2] We reject Sibley's argument that the failure to plead the affirmative defense of judicial immunity precludes dismissal, because dismissal is available, as in this case, when the defense is an obvious bar given the allegations. See Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).

4

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Id. Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. Scott v. Hayes, 719 F.2d 1562, 1565 (11th Cir. 1983).

We reject, from the outset, the use of § 1983 as a device for collateral review of state court judgments.[3] Cf. Exxon Mobile Corp. v. Saudi Basic Indus. Corp., ___ U.S. ___, 125 S. Ct. 1517, 1521-22 (2005). As § 1983 is applied to this case, therefore, we do not ask whether civil incarceration was appropriate. The inquiry is whether ordering civil incarceration is a judicial activity. Similarly, we do not review whether the substance of a question at oral argument was improper, but

---

[3] We note that this form of appellate review is unusual. Sibley does not ask us to fix an erroneous state court judgment, which we could not do, but rather to award $10 million against each state court judge who participated in his cases. This alignment of parties distinguishes this case from a case where review under the Rooker-Feldman doctrine would be appropriate.

rather, whether questions in oral argument are judicial acts. Sibley had his opportunity to contest the propriety of these judges' merits decisions in the appellate process. See Sibley v. Sibley, 833 So. 2d 847 (Fla. Dist. Ct. App. 2002), review denied, 854 So. 2d 660 (Fla. 2003), cert. denied, 540 U.S. 1109, 124 S. Ct. 1074 (2004).

1. Federal Claims Against the State Trial Judge

With regard to Sibley's § 1983 claims against Judge Lando, the district court properly concluded that Judge Lando had judicial immunity from Sibley's claims, because, by issuing the writ of bodily attachment, Judge Lando was committing a judicial act. See Bolin, 225 F.3d at 1239; see also Pope v. Quattelbaum, 884 So. 2d 301, 301 (Fla. App. Dist. Ct. 2004) (discussing and applying Florida Family Law Rule of Procedure 12.615(e)'s writ of bodily attachment provision). The jurisdictional inquiry is a state law question and is discussed in section B of this opinion regarding state law immunity. Because we conclude in that section that there was no "clear absence of jurisdiction" and because Judge Lando was acting in her judicial capacity, the § 1983 claims against Judge Lando were properly dismissed.

2.  Federal Claims Against the State Appellate Judges

Sibley challenges Judge Schwartz's question at oral argument regarding the source of funds used on appeal and the participation of both judges in an unfavorable decision, because the opinion used allegedly "fabricated" evidence. Sibley does not contest the jurisdiction of the appellate court to hear his case and only contends that the actions by the judges were neither judicial nor appellate in nature.[4]  Because asking questions at oral arguments and issuing a decision in the form of a written opinion are judicial actions and because the judges were not acting in the "clear absence of all jurisdiction," Judges Schwartz and Goderich are entitled to judicial immunity from Sibley's claims.[5]  Bolin, 225 F.3d at 1239.

---

[4] Sibley's farcical argument that, because an appellate judge asked a factual question, the proceeding was transformed from an appeal into a trial is unsupported in law.  He cites no case or statute for this argument, and we can find none.  The appeal to the state district court was procedurally proper, and that ends our jurisdictional inquiry.  Florida Rule of Appellate Procedure 9.200, which is cited by Sibley as authoritative, describes the content of the appellate record.  That rule does not provide a mechanism whereby an appellate court becomes a trial court in any circumstance nor does it provide a rubric for removing the jurisdiction of an appellate court.

[5] Sibley argues that it is unjust to allow a judicial immunity defense because he gets no appellate review.  However, in this very case, he sought review in both the Supreme Court of Florida and the United States Supreme Court.  Both declined.  See Sibley v. Sibley, 833 So. 2d 847 (Fla. Dist. Ct. App. 2002), review denied, 854 So. 2d 660 (Fla. 2003), cert. denied, 540 U.S. 1109, 124 S. Ct. 1074 (2004).  Such appeals are the appropriate recourse for review of the decisions of state courts, and not collateral review in federal courts.  Cf. Exxon Mobile Corp., 125 S. Ct. at 1522-23 (discussing appellate review of state court cases in the context of the Rooker-Feldman doctrine); see also Sibley, 136 F. App'x at 252 (discussing Sibley's appellate options).
Sibley betrays his desire for this court to conduct a substantive review of things already decided when he suggests that he received insufficient appellate review.  The law of judicial immunity is well settled and does not include an inquiry into the merits of the decision.  Bolin,

7

B. <u>Judicial Immunity Under State Law</u>

Florida courts have adopted a doctrine of absolute judicial immunity and have equated it to the federal doctrine discussed previously in section A of this opinion.[6]  <u>See</u> <u>Office of the State Attorney v. Parrotino</u>, 628 So. 2d 1097, 1099 (Fla. 1993).  Thus, as in the federal system, judges are immune from suit for judicial acts "unless they clearly act without jurisdiction."  <u>Johnson v. Harris</u>, 645 So. 2d 96, 98 (Fla. Dist. Ct. App. 1994); <u>see also</u> <u>Berry v. State</u>, 400 So. 2d 80, 83 & n.3 (Fla. Dist. Ct. App. 1981) (citing cases).  Sibley argues that his petition for recusal divested Judge Lando of jurisdiction.[7]

---

225 F.3d at 1239 ("This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.").

[6] We note that, because of the location of her court in the Eleventh Judicial Circuit, the precedent governing Judge Lando's conduct is from the Third District of Florida and the Florida Supreme Court.  However, we decide whether immunity applies from the perspective of the Florida Supreme Court.  <u>See</u> <u>McMahan v. Toto</u>, 311 F.3d 1077, 1080 (11th Cir. 2002) (observing that it is the duty of federal courts to decide diversity questions as the state's intermediate appellate courts do unless it is clear that the state supreme court would decide the case differently).

[7] Sibley cites a Florida Statue and Rule of Judicial Administration for the law that removed Judge Lando's jurisdiction.  The statute, which governs disqualification of a judge for prejudice, states:
> Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified.

Fla. Stat. § 38.10.  The Florida Rules of Judicial Administration, which govern disqualification

Sibley's contention would have merit only if the affidavit submitted to the court automatically deprived Judge Lando of jurisdiction.[8]  If the affidavit did not deprive her of jurisdiction, then Judge's Lando would be absolutely immune from suit for judicial acts.  Because, as we concluded in the § 1983 discussion of this opinion, ordering civil incarceration is a judicial act, the only question is whether Judge Lando clearly acted without jurisdiction.

The state appellate court, whose rulings govern Judge Lando's court, stated that a trial judge is not automatically disqualified under Rule 2.160 even if she fails to rule on a disqualification motion within 30 days of filing.  Tarrant v. Jacoboni,

---

of trial judges, states:
> Determination – Initial Motion.  The judge against whom an initial motion to disqualify . . . is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged.  If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action.

Fla. R. Jud. Admin. 2.160(f).  The Florida Supreme Court has noted that Rule 2.160 governs the process for judicial disqualification, while § 38.10 controls the substantive right.  See Cave v. State, 660 So. 2d 705, 707 (Fla. 1995).  Sibley, however, fails to mention that this is not the end of the inquiry.  The judge is not automatically disqualified, but rather must take the facts as true and assess whether those "facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial."  Barnhill v. State, 834 So. 2d 836, 843 (Fla. 2002) (quotations omitted).  Even though it is clear that this is a very deferential standard in favor of granting the litigant's first motion for a new judge, this language means that the petition for withdrawal does not itself remove jurisdiction.

[8] The state argues, in the alternative, that jurisdiction, for purposes of this question, is vested in the trial court and not in a particular judge, citing Kalmanson v. Lockett, 848 So. 2d 374, 379 (Fla. Dist. Ct. App. 2003).  On this argument, it is the court that ordered civil incarceration, and as long as the court was properly with jurisdiction, which Sibley does not deny, then failure to rule on a motion, which would merely alter which judge signed the order, is immaterial.

9

780 So. 2d 344, 344-45 (Fla. Dist. Ct. App. 2001). Thus, at the time her ruling was made,[9] Judge Lando was not automatically disqualified because she failed to rule on the motion for 30 days. We conclude, therefore, that Judge Lando did not act in an absence of jurisdiction.

Furthermore, after Sibley filed the first affidavit seeking Judge Lando's disqualification, Judge Lando retained, at a bare minimum, the jurisdiction to perform ministerial acts and, therefore, was not divested of all jurisdiction over the matter. See Fischer v. Knuck, 497 So. 2d 240, 243 (Fla. 1986). Accordingly, when she issued the writ of bodily attachment , Judge Lando may have acted in the excess of her jurisdiction, but she did not act in the "clear absence of all jurisdiction." See Bolin, 225 F.3d at 1239. Thus, Judge Lando is entitled to judicial immunity as to these claims. Id.

Likewise, with respect to Sibley's eighth claim that Judge Lando's transfer from the Family Division resulted in her loss of jurisdiction over his case, her transfer from the Family Division and all of her rulings Sibley challenged in his

_____

[9] In May 2003, however, the Florida Supreme Court ruled, in Tableau Fine Art Group, Inc. v. Jacoboni, 853 So. 2d 299, 302-03 (Fla. 2003), that a motion to disqualify must be ruled upon within 30 days of filing. The Florida Supreme Court, however, declined to make this ruling retroactive. Id. at 303. Therefore, a state court judge's failure to rule on a motion to disqualify within 30 days, pre-Tableau, does not take away the jurisdiction to rule. See Sibley v. Sibley, 885 So. 2d 980, 983-84 (Fla. Dist. Ct. App. 2004), review denied, 901 So. 2d 120 (Fla. 2005), cert. denied, 04-1411 (U.S. Oct. 3, 2005); City of Hollywood v. Witt, 868 So. 2d 1214, 1218 (Fla. Dist. Ct. App. 2004).

complaint occurred prior to the Florida Supreme Court's decision in <u>Tableau</u>.

Under the binding precedent regarding Fla. Stat. § 38.10 at the time, therefore,

Judge Lando retained jurisdiction over Sibley's case. <u>See</u> <u>Tarrant</u>, 780 So. 2d at

344-45. Thus, her issuance of a writ of bodily attachment was a judicial act, and

she was not operating under a "clear absence of jurisdiction." <u>See</u> <u>Bolin</u>, 225 F.3d

at 1239.

C. <u>Motion To Amend</u>

Under the Federal Rules, leave to amend a complaint that is requested after

a responsive pleading has been filed "shall be freely given when justice so

requires." Fed. R. Civ. P. 15(a). This rule "severely restricts" a district court's

discretion to dismiss a complaint without first granting leave to amend. <u>Bryant v.</u>

<u>Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001). Nonetheless, a district court may

dismiss when such amendment would be futile. <u>Id.</u> "[We have] found that denial

of leave to amend is justified by futility when the complaint as amended is still

subject to dismissal." <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1263 (11th

Cir. 2004) (citation omitted).

We have held that, "[i]n order to receive declaratory or injunctive relief,

plaintiffs must establish that there was a violation, that there is a serious risk of

11

continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." Bolin, 225 F.3d at 1242. In Bolin, we held that a plaintiff was ineligible for declaratory relief, because he had an adequate remedy at law—specifically, the right to appeal to this court or up the state appellate courts and to petition the Supreme Court for certiorari. Id. at 1243. Sibley is ineligible for equitable relief because he had access to the appellate process, a remedy at law, and, thus, his proposed claim for declaratory relief against Judges Schwartz and Goderich would have been futile. See Bryant, 252 F.3d at 1163.

To the extent that Sibley sought to amend his complaint to incorporate a transcript of the hearing during which Judge Lando incarcerated him, the addition of the transcript could not have changed the fact that his complaint failed to state a claim, because, as discussed herein, Judge Lando was not acting in the absence of all jurisdiction, and, therefore, had judicial immunity from suit. Finally, to the extent Sibley sought to amend his complaint to clarify that he wished to sue Judges Schwartz and Goderich in their individual capacities, such an amendment would also be futile, as both judges were entitled to judicial immunity from suit in their individual capacities. See Simmons v. Conger, 86 F.3d 1080, 1084-85 (11th Cir.1996) (noting that a judge sued in his individual capacity was entitled to absolute judicial immunity from damages in a § 1983 case). Thus, the district

12

court did not abuse its discretion in declining to permit Sibley to amend his complaint because that amendment, as well as the other requested actions, would be futile. See Bryant, 252 F.3d at 1163.

## III. CONCLUSION

Sibley complained that Florida state judges acted without jurisdiction and that he deserves compensation or the opportunity to amend his complaint to state a claim. We disagree, because the judges who Sibley sued are shielded from all the claims he brought, and all the claims he sought to bring in the amended complaint, by absolute judicial immunity. Consequently, the district court decision is **AFFIRMED.**