[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13725
Non-Argument Calendar

_____

D.C. Docket No. 9:15-cv-80310-KAM

LARRY E. KLAYMAN,

Plaintiff-Appellant
Cross-Appellee,

versus

STEPHANIE DELUCA,
SUZANNE JAMBE,
JAMES ROLLINSON,
BAKER HOSTETLER,
HEWITT SHAW,

Defendants-Appellees,

BAKER HOSTETLER,

Defendant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 24, 2017)

Before TJOFLAT, WILLIAM PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Larry Klayman, an attorney proceeding pro se, appeals the district court's injunction barring him from filing pro se lawsuits against Baker & Hostetler, LLP and attorneys Suzanne Jambe, James Rollinson, and Hewitt Shaw[1] (collectively the "Baker Defendants") associated with a 2007 Ohio child custody case. The Baker Defendants cross-appeal the district court's injunction order because the court declined to impose a prescreening requirement that would be conducted by the court. After careful review, we affirm.

I.

Klayman and Defendant Stephanie DeLuca divorced in 2003.[2] In 2007, Klayman filed for custody of their children in the Court of Common Pleas for Cuyahoga County, Ohio. Jambe and Rollinson represented DeLuca in the action and were supervised by Shaw. The court granted DeLuca custody of the children—with visitation by Klayman—and ordered Klayman to pay DeLuca's attorney's fees.

In 2008, while the Ohio case was still pending, Klayman filed a pro se suit in Florida state court alleging that the Baker Defendants fraudulently obtained his

_____

[1] Jambe, Rollinson, and Shaw are all partners at Baker & Hostetler.

[2] The scope of this appeal is limited to the injunction order. Since DeLuca is not covered by the injunction she plays no role in this appeal.

2

financial records during the custody proceeding.  The Florida court dismissed the case with prejudice.

In 2014 Klayman filed a pro se suit against the Baker Defendants in the U.S. District Court for the Northern District of California, again alleging that they fraudulently obtained his financial records during the Ohio custody proceeding. The California court dismissed the case without prejudice for lack of jurisdiction.

On March 6, 2015, Klayman filed this action in the U.S. District Court for the Southern District of Florida.  Proceeding pro se, Klayman alleged that the Baker Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961.  The predicate acts he alleged for the RICO claim took place during the Ohio custody case, and included fraudulent attempts to get Klayman's financial records, suppressing evidence from the family court, corruptly influencing the presiding magistrate, and making false accusations of sexual abuse.

The Baker Defendants moved to dismiss for lack of jurisdiction and failure to state a claim.  Specifically, they argued that the case should be dismissed under the Rooker-Feldman doctrine,[3] which prevents district courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court

---

[3] The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983).

judgments." See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005).

The Baker Defendants also moved to enjoin Klayman from filing further lawsuits arising out of the Ohio custody case without first obtaining permission from the court. In support, they filed records from Klayman's earlier pro se lawsuits. These records came from different lawsuits Klayman had filed relating to the Ohio custody case, including the 2008 and 2014 suits against the Baker Defendants.[4]

The Florida district court dismissed Klayman's case on the grounds that it lacked subject-matter jurisdiction as well as personal jurisdiction over the Baker Defendants. However, the court rejected the Rooker-Feldman argument proffered by the Baker Defendants, saying that even if Klayman had prevailed in the underlying Ohio custody case his alleged RICO injuries would still exist.

The court also enjoined Klayman. Citing his history of "vexatious conduct," including the earlier cases against the Baker Defendants, the court enjoined Klayman from filing pro se actions against Baker & Hostetler or any of its attorneys in any court for claims arising out of the Ohio custody case. However, the court declined to require judicial prescreening of any suit filed by Klayman,

_____

[4] Klayman also filed pro se lawsuits against the Ohio judges and magistrates involved with the custody proceeding as well as news organizations that reported on his cases. The suits against the judges were dismissed at the pleadings stage, while summary judgment was entered against Klayman in his suit against the news organizations.

4

instead imposing a requirement that he be represented by counsel in any future case.

Klayman and the Baker Defendants both appealed the district court's injunction order.[5]

## II.

We review a district court's decision to grant an injunction, including an injunction under the All Writs Act, for abuse of discretion, but review the court's findings of fact for clear error. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096–97 (11th Cir. 2004). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, [] makes findings that are clearly erroneous," or applies the law in an unreasonable or incorrect manner. Id. at 1096 (quotation omitted). "But, as its name implies, the abuse-of-discretion standard allows a range of choices for the district court, so long as any choice made by the court does not constitute a clear error of judgment." Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247 (11th Cir. 2016) (quotation omitted).

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to

---

[5] Klayman and the Baker Defendants also appealed the dismissal order. Those appeals were dismissed by this Court in Case No. 16-11822 and this appeal was allowed to proceed solely as to the injunction. See Klayman v. DeLuca, et al., No. 16-11822, slip op. at 2–3 (11th Cir. Jan. 4, 2017).

carry out Article III functions." Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) (per curiam). The All Writs Act is a codification of this inherent power and provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Klay, 376 F.3d at 1099; see also 28 U.S.C. § 1651(a). It allows courts "to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." Klay, 376 F.3d at 1099 (footnotes omitted). This includes the power "to enjoin litigants who are abusing the court system by harassing their opponents." Harrelson v. United States, 613 F.2d 114, 116 (5th Cir. 1980) (per curiam).[6] The court retains this power to sanction a party for abuse of the judicial process even when a case has been dismissed for lack of jurisdiction. See Procup, 792 F.2d at 1073–74 ("The fact that Procup's complaint in this case may have failed to state a justiciable federal claim is of no impact on the court's power to enter injunctive relief against such a recalcitrant litigant. . . . Were a frivolous lawsuit a bar to the court's inherent jurisdiction, the court would be powerless to act upon even a flood of frivolous lawsuits which threatened to bring judicial business to a standstill.").

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

6

Injunctions designed to protect against abusive and vexatious litigation cannot "completely foreclose[] . . . any access to the court." Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993) (per curiam) (quotation omitted). When imposing injunctions for this purpose, "courts must carefully observe the fine line between legitimate restraints and an impermissible restriction" on the right to access the courts. Procup, 792 F.2d at 1072.

## III.

### A.

Klayman argues that the district court's order was improper because he did not abuse the court system. Klayman's argument is belied by the record. The district court had evidence of vexatious litigation initiated by Klayman, including his previous lawsuits against the Baker Defendants and others associated with the Ohio custody case. This history is sufficient for the court to enjoin future vexatious litigation. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295–96 (11th Cir. 2002); Martin-Trigona, 986 F.2d at 1386–87.

Nor did the district court err by requiring Klayman to obtain counsel before filing any future cases. The court, taking account of Klayman's vexatious history and his status as a licensed attorney, concluded that "[r]equiring Klayman to find another attorney willing to certify that Klayman's claims are not frivolous strikes an appropriate balance between Klayman's right to access the courts and the need

7

to deter frivolous suits."  Because the court limited the injunction to preserve Klayman's right to access the courts, see Martin-Trigona, 986 F.2d at 1387, we cannot say that the court abused its discretion, see Sibley v. Lando, 437 F.3d 1067, 1069 n.1 (11th Cir. 2005) (per curiam) (noting that the plaintiff was "unfazed by sanctions against his person, so the Florida courts decided that his frivolous suit could continue only if [he] could convince another lawyer to take his case. . . .  A similar remedy to that employed in Florida courts might be appropriate, upon motion to a district court, given [his] history of vexatious litigation.").[7]

### B.

The Baker Defendants argue that the district court's failure to impose a prescreening requirement in the injunction was a misapplication of the Rooker-Feldman doctrine.  But the district court's application of the Rooker-Feldman doctrine is not within the scope of this appeal.  The injunction order makes no mention of Rooker-Feldman as a basis for its decision.  The Baker Defendants' argument that if the court had reached a different conclusion on the Rooker-Feldman doctrine in the dismissal order then it would have crafted a different injunction calls upon us to examine the dismissal order.  Again, this appeal is

---

[7] This case is distinguishable from Procup, in which this Court vacated an injunction that required a Florida prisoner to file suits through an attorney on the ground that the injunction effectively barred the prisoner from accessing the courts.  Procup, 792 F.2d at 1071, 1074.  No argument has been made here that the injunction will so burden Klayman as to bar him from all access to the courts.

confined to the injunction. See supra note 5. We will not inquire into legal analysis by the district court that was the subject of a separate appeal.

The Baker Defendants identify no other errors in the district court's order. The district court declined to impose a prescreening requirement in part because Klayman could conceivably bring viable claims in another jurisdiction, but also because requiring prescreening would only continue to consume judicial resources. The court found that "the primary purpose of enjoining conduct that abuses the judicial process is to protect against wasting judicial resources on baseless claims." This standard properly reflects the importance of protecting the judiciary from abuse. See Procup, 792 F.2d at 1074 (discussing how vexatious litigation "encroach[es] on the judicial machinery needed by others"). Requiring Klayman to get counsel will reduce his ability to bring frivolous lawsuits against the Baker Defendants, and the court's election of this option was not an abuse of discretion. See id. (discussing the "[c]onsiderable discretion" afforded to district courts in designing injunctions to limit vexatious litigation); see also Sibley, 437 F.3d at 1069 n.1.

**AFFIRMED.**