[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13721
Non-Argument Calendar

_____

D.C. Docket No. 5:15-cv-00555-CEM-PRL

WILLIAM TODD OVERCASH,
an individual,

Plaintiff- Appellant,

HENRY G. FERRO,

Interested Party - Appellant,

versus

MARK D. SHELNUTT,
an individual,
MARK D. SHELNUTT, P.A.,
LORI A. FOULTZ,
an individual,
KENNETH ROBERT PATON,
an individual,
MIKE CARROLL,
an individual,
CHRIS BLAIR,
an individual,
JOE WRIGHT,

an individual,
ROBERT STEVEN RATH,
an individual,
JASON CLARK,
an individual,
DOUGLAS WATTS, JR., et al.,

                                                    Defendants - Appellees,

REBECCA A. GUTHRIE,
an individual, et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 12, 2018)

Before WILLIAM PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

The facts underlying this dispute are—to put it charitably—sprawling and convoluted.  They are also well known to the parties, so we address them here only as necessary.

William Overcash has taken a kitchen-sink approach to litigating (and in some respects, relitigating) claims arising from the state-court adjudication of his divorce and child-custody proceedings.  He sued almost 30 named defendants, and now appeals the district court's application of judicial immunity, its denial of his

2

motions to stay discovery and alter or amend the judgment, its dismissal of his amended complaint with prejudice, and its dismissal of his claims under the Fifth Amendment and the United Nations Convention Against Corruption. His attorney, Henry Ferro, appeals the sanctions imposed on him for filing frivolous claims on Overcash's behalf.

Overcash commenced this litigation in Florida state court, where his marriage—which produced one minor child—was dissolved in 2006. Litigation regarding the dissolution and dependency proceedings for Overcash's parental rights have been ongoing for the last 12 years. Although Overcash claims that "[t]here are no adequate opportunities in the state court" to present his federal-law challenges, we note that his federal claims double as attempted collateral attacks on his divorce and custody proceedings. Overcash's appeal before us amounts to a collection of frivolous and otherwise meritless arguments. We affirm the district court in all respects.

## I

Overcash first asserts that the 11 state judicial defendants in this suit are not entitled to judicial immunity because they violated administrative judicial-assignment rules and improperly assigned or received his divorce and dependency proceedings. In doing so, he says, the judges acted without jurisdiction and are therefore not entitled to immunity.

3

The district court dismissed Overcash's claims against the 11 Florida judges. It held that the claims were "premised on [the judges'] alleged misapplication of the law—either substantively to the case or the law of case assignment—and consequent alleged violations of [Overcash's] constitutional rights." Thoroughly fed up with Overcash's vexatious litigation against judicial officers, the district court found it "reprehensible that any attorney admitted to practice in this state would file such blatantly frivolous claims."

We agree with the district court's assessment that this is precisely the type of litigation that the doctrine of judicial immunity was intended to address: judges "should not have to fear that unsatisfied litigants may hound [them] with litigation charging malice or corruption" when they bring unsuccessful claims. *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d. 1271, 1281–82 (S.D. Fla. 2013). On appeal, Overcash has just repackaged the same conclusory language regarding alleged conspiracies among state-court judges. He has not asserted any new facts or specific errors by the district court. Overcash claims that the 11 judges "were not judicial officers in the cases" and that the cases were "unlawfully assigned"—and therefore "that jurisdiction never attached due to the unlawful assignments," making all subsequent decisions void.

4

But none of this is enough to defeat judicial immunity.  It is well settled that a "judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).  A judge will be subject to liability only when he has acted in the "clear absence of all jurisdiction."  *Id.* at 356–57; *see also Rheuark v. Shaw*, 628 F.2d 297, 304 (5th Cir. 1980).[1]  Overcash's allegation—that the Florida family law and circuit court judges violated Florida Rules of Judicial Administration 2.205(a)(4), 2.215(a), (b)(4), and Administrative Order 2001-3 of the Fifth Judicial Circuit of Florida—finds no support in the law.  Although his contentions concern case assignments—acts deemed "administrative" by the Rules and Administrative Order—"an act may be administrative or ministerial for some purposes and still be a 'judicial' act for purposes of immunity from liability for damages."  *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) (citing *Rheuark*, 628 F.2d at 304–05).

Trying to find a hook, Overcash attacks the district court's reliance on *Martinez* on the ground that it was vacated for mootness on remand from the Supreme Court.  But *Martinez* is not necessary to the conclusion that judicial immunity applies here.  Judges are entitled to judicial immunity for acts taken "in their judicial capacity."  *See Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir.

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

5

2005). This depends on whether the act is "a normal judicial function," whether it "occurred in the judge's chambers or open court," whether the "controversy involved a case pending before the judge," and whether the "confrontation arose immediately out of a visit to the judge in his judicial capacity." *Id.* And *Rheuark*—which *Martinez* cites for the proposition that administrative duties can also be judicial for purposes of immunity—sets out two factors to consider in determining whether an act is judicial: "(1) 'whether it is a function normally performed by a judge,' and (2) 'whether (the parties) dealt with the judge in his judicial capacity.'" 628 F.3d at 304–05 (citing *Stump*, 435 U.S. at 362). Assigning or transferring cases is an activity normally performed by a judge. And, when the parties here interacted with the Florida judges—for example, when requesting a transfer or recusal—it was an interaction about a case pending before the judge, made in open court, regarding decisions within the judge's judicial capacity. *See Sibley*, 437 F.3d at 1070. *Sibley*, *Rheuark*, and *Stump* are all binding on this Court; reliance on *Martinez* is unnecessary.

Finally, Overcash asserts that judicial immunity is inapplicable here on the ground that it has been superseded by the United Nations Convention Against Corruption. According to Overcash, under the Supremacy Clause of the United States Constitution—or at least the references therein to "treaties"—the "parameters of … absolute judicial immunity were frozen by the ratification of the

6

United Nations Convention Against Corruption." Convention Against Corruption, Oct. 31, 2003, 2349 U.N.T.S. 41. In particular, he points to language in the Convention requiring state signatories to "take measures to strengthen integrity and to prevent opportunities for corruption among members of the judiciary … [which] may include rules with respect to the conduct of members of the judiciary." Convention, art. 11.

We agree with the district court that this argument, too, is "patently frivolous." The Convention acknowledges that signatory countries will need to establish or maintain "immunities or jurisdictional privileges" for public officials "for the performance of their functions," and it gives no indication that such immunities would apply only in civil or criminal actions as Overcash suggests. Convention, art. 30. Indeed, the very Article on which Overcash relies states that "measures to strengthen integrity" should be undertaken "without prejudice to judicial independence." Convention, art. 11. And, in any event, the Convention is intended to address international corruption—it was not designed to supersede the application of generally applicable domestic law in purely domestic suits.

The 11 judicial officers named in Overcash's suit are undoubtedly entitled to judicial immunity in this matter.[2]

---

[2] Overcash includes two sentences at the end of his immunity argument about named defendants from the Florida Department of Children and Family Services and the Marion County Sheriff's Office. Although he makes no such claim, we presume that he appeals the qualified immunity

## II

Overcash next contends that "dismissal with prejudice of [the] first amended complaint, including denial of reconsideration, is reversible." Although he provides no guidance to this Court as to why reversal is necessary or appropriate, nor does he affirmatively ask for relief, we will review *de novo* his claim for reversal. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) ("We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.") (quotation omitted). Overcash contends that the district court was wrong to invoke judicial immunity, and that he had articulated the necessary actions of the relevant judges in his first amended complaint in order for his pleadings to stand. As noted above, Overcash's judicial-immunity claims lack merit; he presents no further argument for us to address regarding the dismissal of his complaint.

Further, where "amendment would be futile" the district court is under no compulsion to permit parties leave to amend. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). After receiving notice from the district court of the pleading deficiencies in his original complaint—and then failing to provide

---

afforded to these defendants by the district court. As with some of his other arguments, this section does not meet the standard required by Federal Rule of Appellate Procedure 28(a)(8)(A); we conclude that the issues raised against these defendants are waived on appeal. *Cont'l Tech. Servs. Inc. v. Rockwell Intern Corp.*, 927 F.2d 1198, 1199 (11th. Cir. 1991) ("An argument not made is waived.").

facts in his first amended complaint indicating that amendment would be anything other than futile—the district court did not need to afford Overcash yet another round of amendments. In any event, a second amended complaint would of course be futile after the district court applied judicial immunity. We affirm the district court's denial of the first amended complaint with prejudice.

### III

Overcash's third argument also falls with our affirmance of judicial immunity. He seeks review of three rulings: the district court's stay of discovery, its denial of his motion to amend his complaint—a repackaged request, we note, for reconsideration of the denial of his first amended complaint with prejudice— and denial of his motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). We review these decisions for abuse of discretion. *See Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985).

As Overcash notes, "[t]he sole basis for the denial of [] Plaintiff's Motion[s] … is that the District Court determined that the Judicial Defendants were entitled to absolute immunity and therefore ended the matter." Again, we agree with the course followed by the district court. And, even if we were any less certain about judicial immunity here, Overcash has not met any of the grounds for a Rule 59(e) motion—newly discovered evidence, manifest error of law, or manifest error of

fact.  *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  Motions to alter

or amend a judgment cannot be used to relitigate a decided matter or to introduce

new evidence that could have been raised prior to entry of judgment.  *Id.*  Without

meeting one of the grounds required for a Rule 59(e) motion, Overcash cannot

point to any abuse of discretion from the district court.

Lastly, the very purpose of the immunity defenses raised by the judicial and

officer defendants is to protect them "from having to bear the burdens attendant to

litigation, including pretrial discovery."  *Blinco v. Green Tree Servicing, LLC*, 366

F.3d 1249, 1252 (11th Cir. 2004).  Given the district court's (proper) conclusion

that these defendants were entitled to judicial immunity, the district court did not

abuse its discretion in staying discovery.

## IV

In his fourth argument, Overcash turns from judicial immunity to argue (in a

single page) that he is entitled to sue as a "class of one" for purposes of 42 U.S.C.

§ 1985 which states, in relevant part:

> (2) [I]f two or more persons conspire for the purpose of impeding,
> hindering, obstructing, or defeating, in any manner, the due course of
> justice in any State or Territory, with intent to deny to any citizen the
> equal protection of the laws … (3) the party so injured or deprived
> may have an action for the recovery of damages occasioned by such
> injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2), (3).  The district court dismissed Overcash's claim because

he failed to allege a legally cognizable § 1985 violation or point to any authority

10

recognizing a "class of one" theory under § 1985.[3] On appeal, Overcash continues to argue that the judicial defendants conspired against him—by "engag[ing] in a course of conduct that was intended to impede, hinder, obstruct and/or defeat his ability to have a fair trial in the matters before the Florida Trial Courts."

What Overcash does *not* do is allege, as he is required to do under § 1985, that he is a protected person or class or that he was the subject of class-based animus. *See Chavis v. Clayton County School Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002) ("The 'equal protection' language included in the second clause of section 1985(2), requires an allegation of class-based animus for the statement of a claim.") (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).[4] Nor does Overcash provide any authority for concluding that a "class of one" can bring a claim as a comparator under § 1985 rather than showing class-based animus. *See Prescott v. Jefferson*, No. 17-13584-A, 2018 WL 3937045, at *2, (11th Cir. May 31, 2018) (holding that "[a] plaintiff pursuing a claim under either § 1985(2) or

---

[3] *See Brewer v. Comm'r*, 435 F. Supp. 2d 1174, 1179 (S.D. Ala. 2006) (holding that as a matter of law a class of one does not "demonstrate the racial or class-based discrimination that is required to state a claim under § 1985(3)"). "The emerging consensus" among federal courts is that the "class of one theory" is inapplicable in the § 1985(3) context. *McCleester v. Dep't of Labor & Industry*, No. 3:06-120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007) (collecting cases).

[4] *Griffin* states that under § 1985(3), which provides private parties a cause of action for § 1985(2) violations, "[t]he language requiring an intent to deprive of equal protection" means "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. 88, 102 (1971).

11

§ 1985(3) *must* show that a … class-based animus underlies the actions of the conspirators") (emphasis added).  Overcash has failed to state a § 1985 claim.

## V

Fifth, Overcash attempts, as he did in the district court, to bring a Fifth Amendment claim against certain state-actor defendants.  The district court denied this claim with prejudice, reiterating that the Due Process Clause of the *Fourteenth* Amendment prohibits the States from depriving any person of property without due process of law.  *See* U.S. CONST. amend. XIV.  Where the acts complained of are committed by state (as opposed to federal) officials, as all acts here were, "[t]he Fifth Amendment obviously does not apply."  *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) (en banc) (per curiam).  On appeal, Overcash simply asserts (in a single page) that the district court's position conflicts with the United Nations Convention Against Corruption.  This is not an argument, and we deem this claim waived.  *See Cont'l Tech. Servs., Inc. v. Rockwell Intern. Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (per curiam) (an "issue raised perfunctorily without citation to authority constitutes waiver") (citation omitted).

## VI

Finally, Overcash's counsel, Henry G. Ferro, appeals the district court's imposition of Rule 11 sanctions.  We review a decision to impose sanctions for abuse of discretion.  *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1421 (11th

12

Cir. 1996).  A district court has discretion to impose Rule 11 sanctions when (1) a party files a pleading with "no reasonable factual basis," (2) when a party files a pleading "based on a legal theory [with] no reasonable chance of success" and "cannot be advanced as a reasonable argument to change existing law," or (3) when a party files a pleading "in bad faith for an improper purpose."  *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003).  By contrast, "[a] district court would necessarily abuse its discretion" if it awarded sanctions against a party who merely pleads "an erroneous view of the law or … a clearly erroneous assessment of the evidence."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

Overcash and Ferro dispute the imposition of sanctions because the district court denied the defendants' sanctions motion.  But that is only half the story; the district court itself was "sufficiently concerned by [Overcash's] and [Ferro's] behavior in this case" that it decided to "address the issue of sanctions by its own separate order."

In that separate order, the district court ordered sanctions after Overcash and Ferro had an opportunity to show cause why sanctions should not be imposed. After a careful discussion of the legal standard for Rule 11 sanctions, the order details independent grounds for sanctioning Ferro:  He cast an unreasonably wide net in naming "*every* judicial officer who ever worked on his client's cases in any

13

capacity whatsoever," and when faced with claims of immunity he "advanced frivolous arguments in response." Moreover, Ferro "never pleaded any fact supporting the existence of the alleged conspiracy" and "failed to plead *any* facts" specifically for the many named defendants.

When faced with a district court order dismissing a claim or highlighting the numerous shortcomings in the amended complaint, "rather than concede that any of his arguments were frivolous or lacked merit, ... Ferro accused [the district court] of making personal attacks on him and showing bias, and advanced *additional* frivolous arguments." Ferro accused the district court of improperly relying on unpublished, out-of-circuit cases—but this is not improper. Where there was no conflicting Eleventh Circuit precedent, the district court reasonably determined that it was "incumbent" upon the court to "search for nonbinding precedent that might guide its decision." *See generally* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). The district court did not abuse its discretion in sanctioning Ferro for "failing to act with any modicum of restraint" in naming individuals and filing "objectively frivolous" claims.

The judgment of the district court is **AFFIRMED** in all respects.