[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16560

_____

D.C. Docket No. 1:08-cv-02095-JOF


VERONZA L. BOWERS, JR.,

                    Petitioner - Appellant,

versus

UNITED STATES PAROLE COMMISSION,
WARDEN,

                    Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 9, 2014)

ON PETITION FOR REHEARING

Before WILSON and DUBINA, Circuit Judges, and MIDDLEBROOKS,[*] District
Judge.

_____

[*] Honorable Donald M. Middlebrooks, United States District Judge for the Southern
District of Florida, sitting by designation.

WILSON, Circuit Judge:

Upon reconsideration of this appeal, we vacate our prior opinion, issued on March 14, 2014 and published at 745 F.3d 1127, and substitute the following in its place.

Veronza L. Bowers, who is serving a life sentence for the 1973 murder of a United States Park Ranger, appeals the district court's denial of his motions for discovery and leave to amend his petition for a writ of habeas corpus, as well as the district court's determination that the United States Parole Commission did not violate the mandate handed down by this court in *Bowers v. Keller*, 651 F.3d 1277 (11th Cir. 2011) (per curiam). Because the district court took an overly narrow view of our mandate, we conclude that the district court abused its discretion in denying Bowers's motions for discovery and leave to amend.

## I.

On May 17, 2005, Bowers received a Notice of Action from the Parole Commission, notifying him that he had been granted mandatory parole,[1] effective

---

[1] We use the term "mandatory parole" in accordance with the Parole Commission's regulations. *See* 28 C.F.R. § 2.53. The Parole Commission and Reorganization Act (Parole Act), Pub. L. No. 94-233, § 2, 90 Stat. 219 (1976) (formerly codified at 18 U.S.C. §§ 4201–18) (repealed 1984; *see* 18 U.S.C. §§ 4201–18 note concerning effective date of repeal), entitles a prisoner who has served thirty years of a life sentence to mandatory parole unless the Parole Commission makes certain findings. *See* 18 U.S.C. § 4206(d). Specifically, "the Commission shall not release [a] prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." *Id.*

June 21, 2005.[2]  Prior to the parole date, Parole Commissioner Deborah Spagnoli, acting on her own, sent a fourteen-page memorandum to the Attorney General's office discussing whether the Attorney General should, pursuant to 18 U.S.C. § 4215(c), request that the Parole Commission review its decision to grant Bowers mandatory parole.  The Attorney General made such a request, and, on June 14, 2005, the Parole Commission voted to reopen Bowers's case.

The Parole Commission met on October 6, 2005, after receiving comments from both the Attorney General and Bowers, and voted to deny mandatory parole. The Parole Commission unanimously agreed that an escape attempt made by Bowers in 1979 constituted a serious violation of institution rules, thus precluding the Parole Commission from granting mandatory parole.  *See* 18 U.S.C. § 4206(d). Additionally, a majority of the Parole Commission determined that Bowers was "likely to commit a crime in the future" based on its belief that the murder committed by Bowers "was motivated by [his] attitude towards and hatred for the United States Government, its employees, and its law enforcement" and that Bowers still held those feelings.

---

[2] On January 24, 2005, the Parole Commission granted Bowers mandatory parole effective February 21, 2005.  However, on February 17, 2005, the Parole Commission voted to reopen Bowers's case for a special reconsideration hearing under 28 C.F.R. § 2.28(f) based on a "good faith belief" that newly acquired information would "lead to a different decision with regard to release."  Two Hearing Examiners conducted the special reconsideration hearing and recommended to the Parole Commission that Bowers be released on mandatory parole.  The issue came before the Parole Commission in May 2005 and resulted in a 2-2 split decision.  The Parole Commission's General Counsel concluded that the split vote entitled Bowers to release. On May 13, 2005, the Parole Commission granted mandatory parole effective June 21, 2005.

After the Parole Commission made its decision, Bowers learned of Commissioner Spagnoli's memorandum and filed a petition for a writ of habeas corpus in the Northern District of Georgia, challenging the Parole Commission's decisions to re-open his case, first on February 17, 2005, under 28 C.F.R. § 2.28(f) and again on June 14, 2005, under 28 C.F.R. § 2.27. Bowers contended, *inter alia*, that (1) Commissioner Spagnoli's actions were improper and (2) the Parole Commission's October 2005 reconsideration of Bowers's parole was affected by political pressure from the Attorney General. The district court denied Bowers's petition, noting that the Parole Commission never lacked "jurisdiction or authority to revise its decision to grant or deny [Bowers's] parole."

Bowers appealed, and we reviewed the actions taken by the Parole Commission, noting that we would not reverse the Parole Commission's decisions "unless [they] involve[d] flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion." *Keller*, 651 F.3d at 1291 (internal quotation marks omitted). In our decision dated August 26, 2011, we recounted Commissioner Spagnoli's conduct and the subsequent unusual circumstances of the Attorney General's request for reconsideration. *See id.* at 1286-90.

As to the Attorney General's influence, we noted that "[a]t the end of May 2005, the Office of the Deputy Attorney General requested information about

4

Bowers' case" and later inquired whether it would be appropriate for one of the Commissioners to explain her vote. *Id.* at 1287. Although the Parole Commission's Chief of Staff responded that it would be inappropriate for the Attorney General to ask a Commissioner to explain her vote, the Attorney General nonetheless requested reconsideration of the Parole Commission's May 2005 decision to give the commissioners "the opportunity to clarify their positions on whether to grant or deny parole to Bowers." *Id.*

Our opinion in *Keller* observed that the Attorney General's request was unprecedented in the Parole Commission's 30-year history and that, therefore, the Parole Commission had to first "develop procedures to handle the Attorney General's request." *Id.* The Parole Commission provided "the Department of Justice with a draft set of rules and procedures for deciding the Attorney General's petition." *Id.* at 1287. In turn, "the Department of Justice provided comments as to how its appeal should be handled." *Id.* at 1288.

Our opinion also noted that the Parole Commission considered Bowers's case in a "closed" meeting in October 2005. *Id.* at 1288. An assistant general counsel to the Parole Commission "orally presented the case, stating he was the person who would know the facts of this case better than anybody because [he] defended it several times in federal court and ha[d] been working closely with the

5

Attorney General's Office back and forth regarding this review." *Id.* at 1288. The Parole Commission then decided to deny Bowers's request for parole. *Id.*

Our *Keller* opinion acknowledged Bowers's contentions that the "October 2005 decision was tainted by political pressure and the actions of Commissioner Spagnoli." *Id.* at 1290. We granted relief only as to Bowers's claim related to the actions of Commissioner Spagnoli and "affirm[ed] the district court's denial of habeas relief as to Bowers' remaining claims." *Id.* at 1296.

As to Commissioner Spagnoli, we found that the Parole Commission's June 14 decision was "impermissibly tainted by Commissioner Spagnoli's unauthorized actions revealing her bias."[3] *Id.* at 1295 (internal quotation marks omitted). These actions "violated the Parole Act's mandate that the Parole Commission function as an independent agency" in the Department of Justice and "impermissibly taint[ed] the Parole Commission's decision to reopen." *Id.* at 1293; *see also* 18 U.S.C. § 4202 (establishing the Parole Commission as an independent agency in the Department of Justice).

Because Spagnoli did not act "as an independent and neutral decision-maker at the time of the Parole Commission's June 14, 2005 decision," *Keller*, 651 F.3d

---

[3] These actions included Commissioner Spagnoli's memorandum, which the magistrate judge below described "as a polemic against the decision to parole," as well as multiple communications with Department of Justice officials regarding the Bowers case. *Keller*, 651 F.3d at 1294–95 (internal quotation marks omitted). We determined that the actions indicated that Commissioner Spagnoli "inappropriately assumed the role of advocate against Bowers and functioned as an adversary to the prisoner." *Id.* at 1295 (internal quotation marks omitted).

6

at 1293, we vacated that decision and directed the district court to "return this case to the Parole Commission in its posture as of May 17, 2005," *id.* at 1295. We instructed the Parole Commission to "immediately review Bowers'[s] case to determine whether any further action is necessary or authorized," and directed the district court to grant Bowers's petition "[u]nless the Parole Commission initiate[d] proceedings within sixty (60) days." *Id.* at 1296. Further, we noted that there was no evidence indicating that the Parole Commission, as it is currently constituted,[4] would necessarily violate its own rules or the Parole Act or that Bowers would not "receive a fair and impartial hearing" if the Parole Commission decided to take further action. *Id.* And, as noted above, we "affirm[ed] the district court's denial of habeas relief as to Bowers' remaining claims." *Id.*

On September 29, 2011, the Parole Commission informed Bowers that it would be reviewing the record to determine whether to hold a re-vote of Bowers's case. The Parole Commission stated that it would be reviewing materials from before and after May 2005 and set an October 14, 2011 deadline for submitting new materials. Instead of waiting until after the deadline to conduct the record review, the Parole Commission, without giving notice or explanation, conducted

---

[4] In 2005, the Parole Commission consisted of Chairman Edward F. Reilly, Jr., Cranston J. Mitchell, Patricia K. Cushwa, Isaac Fulwood, Jr., and Deborah A. Spagnoli. Commissioners Spagnoli and Reilly have since resigned, leaving Commissioners Mitchell, Cushwa, Fulwood, and J. Patricia Wilson Smoot as the members of the Parole Commission.

7

the record review on October 4, 2011, and decided to re-vote Bowers's case.[5]  The

Parole Commission re-voted on December 8, 2011, and denied mandatory parole

based on a finding that Bowers "seriously violated prison rules" by attempting to

escape in 1979.

After exhausting his administrative appeals, Bowers moved for discovery[6]

and leave to amend his petition for habeas corpus.[7]  The district court denied

---

[5] Bowers notes that the "expedited action . . . coincided with the Senate's consideration" of a bill extending the life of the Parole Commission.  The Sentencing Reform Act of 1984, Pub. L. No. 98–473, ch. 2, 98 Stat. 1837 (1984) (codified as amended at 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*), abolished the Parole Commission, but provided for a transition period in which the Parole Commission would continue to function.  *Keller*, 651 F.3d at 1281 n.6.  That period has since been continuously extended.  *See* Judicial Improvements Act of 1990, Pub. L. No. 101–650, § 316, 104 Stat. 5089 (1990) (extending from 1992 to 1997); Parole Commission Phaseout Act of 1996, Pub. L. No. 104–232, § 2(a), 110 Stat. 3055 (1996) (extending from 1997 to 2002); 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107–273, § 11017(a), 116 Stat. 1758 (2002) (extending from 2002 to 2005); United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. No. 109–76, §2, 119 Stat. 2035 (2005) (extending from 2005 to 2008); United States Parole Commission Extension Act of 2008, Pub. L. No. 110–312, §2, 122 Stat. 3013 (2008) (extending from 2008 to 2011); United States Parole Commission Extension Act of 2011, Pub. L. No. 112–44, §2, 125 Stat. 532 (2011) (extending from 2011 to 2013); United States Parole Commission Extension Act of 2013, Pub. L. No. 113–47, § 2, 127 Stat. 572 2013 (extending from 2013 to 2018).  Bowers suggests that these periodic congressional votes reauthorizing the Parole Commission's continued existence make the Parole Commission uniquely susceptible to pressure from members of Congress.  Previously, Bowers alleged that the Parole Commission was contacted in 2005 by a member of a Senator's staff, who specifically asked about Bowers's case and said that the Senator may put a hold on the bill reauthorizing the Parole Commission.  Here, Bowers points to the Parole Commission's October 4, 2011 action, which occurred a mere two days before the Senate vote to pass the United States Parole Commission Extension Act of 2011, and suggests that the Parole Commission has been improperly influenced.

[6] Bowers requests discovery into the following issues: (1) "The materials considered by the Commission in connection with its 're-vote' and whether those materials were received pre- or post-remand; [(2)] The steps the Commission took (if any) to purge the taint of Commissioner Spagnoli's actions on the agency and the undue influence of the DOJ; [(3)] The contacts and pressures placed on the Commission by other people and organizations outside of the agency relating to its 're-vote'; [(4)] The extent to which any members of Congress contacted the agency

8

Bowers's motion for discovery, noting that our mandate did not "authorize[], instruct[], or suggest . . . that any additional discovery concerning ex-Commissioner Spagnoli's activities would be necessary or prudent" and that we had not granted Bowers any relief based on his claims that the Parole Commission was subject to political pressure. Further, the district court denied the motion for leave to amend and considered only "whether the procedure utilized by the Parole Commission was authorized by the Parole Act and the Parole Commission's rules and regulations." Finally, the district court held that the Parole Commission did not violate the Parole Act or any of the Parole Commission's rules or regulations.

On appeal, Bowers asks us to reverse the district court's denial of the motions for discovery and leave to amend, as well the district court's decision that the Parole Commission did not violate its own rules and regulations. For the reasons set forth below, we hold that the district court abused its discretion by denying Bowers's motions for discovery and leave to amend. We affirm the district court on all other grounds.

---

about Mr. Bowers'[s] case or placed any pressure on the agency during the recent reauthorization process; and [(5)] The Commission's basis for its decision to 're-vote,' the basis for its December 8, 2011 decision, and the standards and procedures the agency used."

[7] Bowers seeks to add claims alleging that the Parole Commission violated (1) the Due Process Clause of the Fifth Amendment, (2) the Parole Act, (3) the Commission's governing rules and regulations, and (4) our mandate by deciding to re-vote the case on the basis of an expanded record, conducting the re-vote on an even greater record, applying a new standard, failing to act as a neutral, unbiased decision-maker, making arbitrary and result-oriented decisions, and denying release on mandatory parole.

II.

The denial of habeas corpus relief under 28 U.S.C. § 2241 is reviewed de novo. *Keller*, 651 F.3d at 1291. We review a district court's denial of a motion for leave to amend for abuse of discretion. *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (per curiam). However, "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks omitted). We review the district court's denial of discovery for abuse of discretion. *Arthur v. Allen*, 452 F.3d 1234, 1243, *modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006) (per curiam).

III.

Unlike typical civil litigants, habeas petitioners are "not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796–97 (1997). It is within the discretion of the district court to grant discovery upon a showing of good cause. *Id.* at 904, 117 S. Ct. at 1797 (quoting Rule 6(a) of the Rules Governing Section 2254 Cases).[8] "Good cause is demonstrated where specific allegations show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to

---

[8] Although Bowers filed this petition for a writ of habeas corpus under § 2241, Rule 1(b) of the Rules Governing Section 2254 Cases states: "The district court may apply any or all of these rules to a habeas corpus petition not [within 28 U.S.C. § 2241]."

10

relief." *Arthur*, 459 F.3d at 1310–11 (internal quotation marks and alterations omitted).

In denying Bowers's motion for discovery, the district court did not consider whether Bowers had demonstrated good cause. Instead, it interpreted the absence of an instruction to conduct discovery in our mandate from *Keller*, *see* 651 F.3d at 1296, to mean that discovery would not be appropriate. Further, it found that discovery into any potential political pressure placed on the Parole Commission should be denied because we did not grant relief on those grounds despite the fact that Bowers had made claims of such pressure before us. *See id.* at 1290. In doing so, the district court abused its discretion by basing its decision on an incorrect interpretation of our mandate. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) ("A district court may . . . abuse its discretion by applying the law in an unreasonable or incorrect manner.").

Our 2011 opinion in *Keller* granted relief based on the actions of Commissioner Spagnoli. We then "affirm[ed] the district court's denial of habeas relief as to Bowers' remaining claims," 651 F.3d at 1296, including Bowers's political pressure claim based on the Attorney General's influence on the Commission's October 2005 decision, *see id.* at 1290. We also rejected Bowers's argument that he would not receive fair proceedings on remand, stating that there was "no evidence any of the current Parole Commissioners would act outside the

confines of the Parole Act or the Parole Commission's rules and regulations." *Id.*

at 1296. As such, our *Keller* mandate foreclosed any subsequent political-pressure

claim based on pre-October 2005 evidence of the Attorney General's influence on

the Commission. *See Transamerica Leasing, Inc. v. Institute of London*

*Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (explaining that the law of the

case doctrine precludes consideration of matters previously decided explicitly or

by necessary implication).

That said, "the law of the case doctrine cannot apply when the issue in

question was outside the scope of the prior appeal." *Id.* at 1332. As a general

matter, the Parole Commission's 2011 decision was outside the scope of the prior

appeal in this case.

And, although we did not explicitly instruct the district court to determine

whether discovery would be necessary, the absence of such an instruction in the

*Keller* mandate should not be read to preclude discovery. We mandated that

Bowers's case be returned to its posture as of May 17, 2005 because it was clear

that the Parole Commission, by virtue of Commissioner Spagnoli's actions, had

failed to act independently and without bias. *See Keller,* 651 F.3d at 1295–96.

While our opinion noted that no evidence suggested that the current Parole

Commission would be unable to provide Bowers a "fair and impartial hearing," *id.*

at 1296, it did not foreclose the possibility that subsequent evidence of any events

after October 2005 could give rise to such a conclusion.  Our mandate sought to ensure that Bowers would receive his parole decision in the absence of bias.  The district court abused its discretion by reading our mandate so narrowly as to preclude discovery into whether the Parole Commission acted independently and without bias in reaching its 2011 decision denying parole.  *See United States v. Mesa*, 247 F.3d 1165, 1170 (11th Cir. 2001) ("The district court must implement both the letter and spirit of the mandate, taking into consideration our opinion and the circumstances it embraces.").

To be sure, the district court was right to avoid addressing matters that were outside the scope of our mandate.  *See United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (noting that a district court abuses its discretion by asserting jurisdiction over issues not within the scope of a mandate from this court).  However, in doing so, the court took too narrow a view of our mandate's scope and abused its discretion by failing to give Bowers's request for discovery fair consideration.

Bowers alleges that external political pressure prevented the Parole Commission from acting as an unbiased, independent agency when deciding his case.  He points to past allegations of political considerations influencing the Parole Commission's decisions, as well as the suspicious timing of the October 4, 2011 decision to re-vote.  Given the unique history of bias and alleged political

13

pressure in this case, we find that these allegations are more than "mere speculation" and give us reason to believe that, with further discovery into post-October 2005 political pressure on the Parole Commission from any source Bowers may "be able to demonstrate that he is entitled to relief." *See Arthur*, 459 F.3d at 1311 (internal quotation marks omitted).  Therefore, Bowers should be granted discovery on the impact that post-October 2005 political pressure may have had on the Parole Commission's 2011 decision.[9]  However, Bowers should not be granted discovery on the influence on the Commission before October 2005 nor on the impact Commissioner Spagnoli's bias may have had on the Parole Commission as it stands now.[10]

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend pleadings with leave from the court.  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted "when justice so requires."  *Id.*  District courts have limited

---

[9] *See supra* note 6.  Issues 1, 3, 4, and 5 all clearly relate to the potential impact of political pressure on the Parole Commission's decision.

[10] Bowers's suggestion that the current Parole Commission was tainted by Commissioner Spagnoli's bias is pure speculation and relies on an overly broad interpretation of our mandate.  Unlike his claim that the Parole Commission did not act independently because it was under political pressure, Bowers offers no evidence—besides an outcome that he deems undesirable—showing that any members of the Parole Commission became biased against him as a result of viewing documents created by Commissioner Spagnoli.  These documents were central to our decision in *Keller* because they showed that Commissioner Spagnoli "was not acting as an independent and neutral decision-maker" at the time she was involved in deciding Bowers's case.  651 F.3d at 1293–95.  These documents carry little weight here, however, because they do not demonstrate any information about the beliefs or interests of the *current Commissioners*.  Accordingly, Bowers's allegation that the current Commission was biased against him based on viewing—not preparing—these documents is mere speculation and fails to show good cause for discovery.  *See Arthur*, 459 F.3d at 1311.  Thus, on remand, the district court should not allow discovery into issue 2.  *See supra* note 6.

discretion in denying leave to amend, and should grant a motion to amend "[u]nless there [are] substantial reason[s] to deny" it. *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (per curiam) (first alteration in original) (internal quotation marks omitted).

As with its decision to deny discovery, the district court's decision to deny leave to amend was informed largely by its overly narrow interpretation of our mandate. It also noted that Bowers's habeas petition was already "long and complicated." Neither explanation amounts to a "substantial reason" for denying a motion to amend. Accordingly, the court abused its discretion in denying leave to amend.

## IV.

For the foregoing reasons, we hold that the district court abused its discretion in denying Bowers's motions for discovery and leave to amend. We reverse and remand for proceedings in accordance with this opinion. We affirm the district court on all other grounds.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

15