[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11127
Non-Argument Calendar

_____

D.C. Docket Nos. 1:15-cv-00287-TWT,
1:15-cv-03001-TWT


ALEX HIGDON,

                                                                    Plaintiff-Appellant,


versus


JUDGE GAIL S. TUSAN,
KRYSTAL MOORE,
JUDGE BENSONETTA TIPTON-LANE,
GEORGIA LORD,
Former Staff Attorney,
JUDGE KELLY LEE ELLERBE, et al.,

                                                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 14, 2018)

Before MARCUS, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Alex Higdon has appealed from the district court's dismissal of his pro se lawsuit, alleging judicial misconduct and related claims against various defendants involved in his Fulton County, Georgia ("Fulton County") divorce, child custody, and child support proceedings. In the instant complaint, Higdon alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986, as well as Georgia state law against Fulton County, certain Fulton County judges and employees, and a Fulton County commissioner. We previously vacated and remanded the district court's orders granting the defendants' Fed. R. Civ. P. 12(b)(6) motions in the case, because they contained an insufficient explanation of the court's rulings.

The district court has now entered a new order holding that all the claims against the judges are barred by judicial immunity, and that all of Higdon's claims for declaratory relief are barred by the Rooker-Feldman doctrine.[1] As for Krystal Moore, who was Judge Gail Tusan's staff attorney during some of Higdon's family court proceedings, the district court concluded that Higdon's claims failed because he had not alleged that Moore was acting under color of state law at any time, and declined to exercise jurisdiction over the state law claims against Moore. As for Commissioner John Eaves, who Higdon named as a representative for the full

---

[1] The Rooker–Feldman doctrine derives from Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Board of Fulton County Commissioners, the district court dismissed all the claims since they were brought against him in his official capacity only. And as for Higdon's claims against Fulton County, the district court held that Higdon had only alleged violations of state law, not cognizable under 42 U.S.C. § 1983. After careful review, we affirm.

I.

We review motions to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005). We review questions of law de novo, including issues of Eleventh Amendment immunity, service of process, judicial immunity, and the application of the Rooker-Feldman doctrine. Smith v. Owens, 848 F.3d 975, 978 (11th Cir. 2017); United States v. Ala. Dep't of Mental Health & Mental Retardation, 673 F.3d 1320, 1324 (11th Cir. 2012); Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011); Doe v. Fla. Bar, 630 F.3d 1336, 1340 (11th Cir.2011); Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 920 (11th Cir. 2003); Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001). We also review de novo the district court's interpretation and application of statutes of limitations. Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006). We review for abuse of discretion a district court's denial of a motion for leave to

amend, Bowers v. United States Parole Comm'n, Warden, 760 F.3d 1177, 1183 (11th Cir. 2014), as well as a district court's decision to decline to exercise supplemental jurisdiction. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1185 (11th Cir. 2003). We review de novo a district court's ruling that an amendment to a complaint would be futile. SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1336 (11th Cir. 2010). Finally, we may affirm on any ground supported by the record. Trotter v. Sec'y, Dep't of Corrs., 535 F.3d 1286, 1291 (11th Cir. 2008).

## II.

The relevant allegations found in a long and digressive 274-page complaint are these. According to the complaint, Judges Gail Tusan and Bensonetta Lane each presided over part of Higdon's divorce proceedings, which began in 2009. In 2010, Judge Tusan hired Moore as a staff attorney, and then both she and Moore allegedly concealed the fact that Moore had never passed the bar exam and was not a licensed attorney. The complaint alleged that Higdon was interviewed by CBS news on February 24, 2012 concerning his case and reports of judicial impropriety in Fulton County, and on February 27, 2012, Judge Tusan also granted CBS an interview, during which she spoke about the merits of his pending divorce case. Then, on January 2, 2013, Judge Tusan fired Moore, after Moore filed an official complaint about Judge Lane's judicial conduct. At that point, Moore allegedly e-

4

mailed Higdon to ask that he contact her, and in the ensuing conversations, some of which Higdon recorded, Moore said she would share communications and court documents with him that would implicate certain Fulton County judicial officers in misconduct in, inter alia, his divorce proceedings.

The complaint alleged that, in time, Moore became reluctant to help him. After Higdon filed his "suit against the violators of his constitutional rights," Moore failed to show up for her subpoenaed deposition or to abide by the court's order requiring her to produce documents. On August 19, 2013, Higdon uploaded the recordings of his conversations with Moore to the internet, in conjunction with an article detailing alleged constitutional violations committed by Fulton County judges. Thereafter, Judge Tusan allegedly told Moore that if she did not recant her statements and accuse Higdon of harassment, stalking, defamation, and falsifying the recordings, Judge Tusan would file a complaint with the Georgia Bureau of Investigations ("GBI") against her, "instigate and sustain" criminal investigations against her for wrongdoing, and ruin her legal career in Atlanta. Higdon specifically alleged that, on August 26, 2013, Judge Tusan called the GBI to report that Moore was referring to herself as an attorney despite not having passed the bar. That same day, as a result of the threat, Higdon alleged that Moore filed a false police report against him for making harassing phone calls and stalking;

5

obtained a temporary protective order against him, which was subsequently dismissed; and he was later charged and arrested but the charges were dismissed.

The complaint further claimed that Judge Lane improperly took over his divorce case from Judge Tusan in October 2013. During those proceedings, Judge Lane allegedly had Higdon illegally incarcerated twice on a contempt order. The complaint adds that on January 29, 2014, as part of her agreement with Judge Lane, Moore sent a letter to multiple parties renouncing all of her previous claims of court fraud, and claiming that Higdon was mentally ill and should not be allowed near children. In addition, Moore allegedly criticized Higdon, a licensed clinical psychologist, on several websites and filed a complaint about him with the Georgia Board of Licensing for Psychologists.

In January 2015, Higdon filed suit against the defendants, alleging violations of §§ 1983, 1985, and 1986, and Georgia state law. In Section I of the amended complaint, Higdon sought to describe a conspiracy and other claims against Judge Tusan, Judge Lane, and Moore, acting in their individual and official capacities in his divorce proceedings and elsewhere, and listed the corresponding counts in Section II (Parts A-F); in Section III, Higdon sought to describe claims against Judge Tusan and Moore, all of which concerned his divorce proceedings and the CBS interview, and listed the corresponding counts in Section IV (Parts A-D); and in Section V, he sought to describe constitutional violations committed by Fulton

County through "policy makers" Judge Tusan, Judge Cynthia Wright, and County Commissioner Eaves, and listed the corresponding counts in Section VI (Part A).

III.

As the record shows, the operative complaint verges on a shotgun pleading that is voluminous and difficult to analyze.   Nevertheless, the district court dismissed the amended complaint on the merits, and not because it was a shotgun pleading or because it failed to comply with Fed. R. Civ. P. 8.  The district court further held that any additional amendment to the complaint would be futile.  Thus, to the extent Higdon argues that the district court erred in dismissing his amended complaint as a shotgun pleading, his argument fails.   Having reviewed the amended complaint in detail, we conclude that the district court did not err in dismissing it in full nor in determining that any amendment would be futile.  We address each group of counts in the amended complaint in roughly numerical order.

A.

First, we are persuaded by the arguments of Judges Tusan and Lane that the dismissal of all claims lodged against them and Moore in their official capacities in Section II should be affirmed on the ground that they are barred by the Eleventh

Amendment and sovereign immunity.[2]  The Eleventh Amendment prohibits federal courts from entertaining suits brought by citizens against a state, including its agencies and departments, whether the relief sought is legal or equitable.  Uberoi v. Sup. Ct. of Fla., 819 F.3d 1311, 1313 (11th Cir. 2016).  It bars suits against state officials where the state is, in fact, the real party in interest.  Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).  Suits against state officials in their official capacity are essentially actions against the state.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  The doctrine of Ex parte Young, 209 U.S. 123 (1908), provides an exception to this rule for suits against state officials seeking prospective equitable relief to end ongoing and continuing violations of federal law.  Summit, 180 F.3d at 1336.  The Young doctrine does not permit judgments against state officers declaring that they violated federal law in the past, nor does it allow a plaintiff to adjudicate the legality of past conduct.  P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993); Summit, 180 F.3d at 1337.

Here, Higdon's claims against Judge Tusan, Judge Lane, and Moore in their official capacities are barred. No prospective relief is sought and the Ex Parte

---

[2] Higdon also argues, as he does in a related appeal, that the district court's February 2017 order after remand in this case lacked factual substantiation, included false statements of fact, and inadequately addressed the merits of his claims.  As we discuss in greater detail in our opinion in the related appeal, No. 17-11154, the district court's order after remand contained a sufficient explanation of the rulings in both cases to allow for meaningful appellate review.  See Danley v. Allen, 480 F.3d 1090, 1091 (11th Cir. 2007) (instructing district courts to provide sufficient explanations of their rulings so we can engage in meaningful appellate review).

8

Young doctrine does not apply. The declaratory relief that Higdon requests in Section II seeks the entry of an order declaring that the state court violated federal law in the past or overturning state court orders. Again, the Ex Parte Young doctrine does not apply. Consequently, we affirm the dismissal of all of the counts found in Parts A-E of Section II of the amended complaint against Judge Lane, all of which were brought against her in her official capacity. We also affirm the dismissal of the counts found in Parts A, C, D, and E of Section II that were brought against Judge Tusan and Moore in their official capacities.

B.

Next, we affirm the dismissal of Counts 2, 4, 6 and 9 found in Part A of Section II, Counts 1-7 found in Part C of Section II, and all the counts found in Parts A-C of Section IV against Judge Tusan and Moore, all of which were brought in their individual capacities, on judicial immunity grounds. A judge is entitled to absolute judicial immunity from damages for actions taken while acting in her judicial capacity, unless she acted in the "clear absence of all jurisdiction." Sibley, 437 F.3d at 1070. This immunity applies even when the judge's acts are in error, malicious, or in excess of her jurisdiction, because it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547,

9

554 (1967); Stump v. Sparkman, 435 U.S. 349, 344 (1978). A judge acts in the clear absence of all jurisdiction if the matter upon which she acts is clearly outside the subject matter jurisdiction of the court over which she presides. See Stump, 435 U.S. at 357–59; Bradley v. Fisher, 80 U.S. 335, 351–52 (1871). Since questions of subject matter jurisdiction often are difficult, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump, 435 U.S. at 356. A finding of judicial immunity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; or (4) the confrontation arose immediately out of a visit to the judge in her judicial capacity. Sibley, 437 F.3d at 1070.

The idea of absolute quasi-judicial immunity derives from absolute judicial immunity. Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Non-judicial officials are encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process. Id. Like judges, these officials must be acting within the scope of their authority. Id.

In Counts 1-9 found in Part A of Section II, Higdon brought, among other things, § 1983 conspiracy claims alleging that in retaliation for uploading recordings of his conversations with Moore about alleged constitutional violations committed by Fulton County judges, Judges Tusan and Lane compelled Moore to:

10

(1) file two false police reports against him for harassing phone calls and stalking; (2) obtain a temporary protective order against him, which eventually led to his arrest; (3) maliciously prosecute him; (4) publish false reviews of his business; (5) file a false complaint with the state licensing board for psychologists; and (6) send letters claiming that he was mentally ill and should not be allowed near children. He also alleged that in retaliation for his actions, the defendants conspired to violate his right of access to the courts, his right to care for his children, and his rights to the equal protection of the laws and substantive due process in his divorce case.

In Part C of Section II, Higdon brought additional claims under § 1985(2) against Judge Tusan, Judge Lane, and Moore allegedly for conspiring to deter him from testifying in Georgia's courts. In Part D, Higdon brought claims under § 1985(2) against Judge Tusan, Judge Lane, and Moore for conspiring to deter him from testifying in federal district court. In Part E, Higdon lodged claims against Judge Tusan, Judge Lane, and Moore under § 1986, alleging that the defendants knew of the conspiracies outlined in the previous counts, and refused to prevent them. In Part F, Higdon brought state law claims against Moore. Then, in Parts A-

11

C of Section IV, Higdon brought claims against Judge Tusan and Moore under §§ 1983 and 1985(2), arising from adverse rulings in his divorce case.[3]

Again, we agree with the district court that judicial immunity protects Judge Tusan and Moore from the charges contained in many of the counts found in Section II and all of the counts found in Parts A-C of Section IV. As a result, judicial immunity bars Counts 2, 4, 6, and 9 found in Part A of Section II, Counts 1-7 found in Part C of Section II, and all the counts found in Parts A-C of Section IV brought against Judge Tusan and against Moore, in her capacity as Judge Tusan's employee. We do so because these counts challenge orders, delays, or omissions taken by Judges Tusan or Lane in adjudicating his divorce case. See Sibley, 437 F.3d at 1070-71; Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000). Indeed, even ministerial acts involved in managing a case's docket are functions "normally performed by a judge," and, thus, within the contemplated protection of judicial immunity. Mireles v. Waco, 502 U.S. 9, 12 (1991); Sibley, 437 F.3d at 1070-71; Roland, 19 F.3d at 555.

Similarly, as for Counts 1, 3, 5, 7, and 8 found in Part A of Section II that the defendants conspired to have Higdon and/or Moore criminally investigated and

_____

[3] According to the amended complaint, Debra Beacham was a private party engaged with state officials in some of these alleged actions. On remand, Higdon failed to comply with a court order instructing him to file an affidavit of service demonstrating that Beacham had been properly served, and the district court dismissed Higdon's lawsuit as to her for failure to comply with a court order. Higdon has not appealed that order. Accordingly, Beacham is no longer a party to this action. See Insinga v. LaBella, 817 F.2d 1469, 1470 (11th Cir. 1987).

prosecuted and subject to civil protective orders -- for Higdon's conduct towards Moore, which could have affected the disposition of his case, or for Moore's conduct in Higdon's case -- we conclude that these actions too fairly must be characterized as falling within the ambit of Judge Tusan's judicial immunity. See, e.g., Barrett v. Harrington, 130 F.3d 246, 259 (6th Cir. 1997). These claims were properly dismissed on judicial immunity grounds.[4]

## C.

After affirming the district court's dismissal of claims on, inter alia, sovereign and judicial immunity and Rooker-Feldman grounds, we are left with some of the claims found in Counts 1, 3, 5, 7, and 8 in Part A of Section II and the counts found in Parts D and E of Section II -- those alleging that Judge Tusan and Moore allegedly conspired with Judge Lane outside of their judicial capacity to punish Higdon for publically revealing their judicial improprieties. However,

---

[4] In Part A of Section II of the amended complaint, Higdon also alleges that Moore sent a "slanderous letter" to the opposing party in his pending divorce case, and seems to suggest that Judge Tusan was involved in sending the letter. But even if we assume that this allegation sufficiently states a claim, it is nevertheless barred by the Rooker–Feldman doctrine, which bars federal district courts from reviewing state court decisions. Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir. 2009). The Rooker–Feldman doctrine is confined to cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced, and inviting district court review and rejection of those judgments. Id. at 1273. The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009). A claim is inextricably intertwined if it would effectively nullify the state court judgment, or if it succeeds only to the extent that the state court wrongly decided the issues. Id. Because Higdon seems to be saying that Moore's letter to opposing counsel evinced that his divorce proceedings were wrongly resolved, this claim is barred by the Rooker-Feldman doctrine.

these counts, brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, fail to state a claim.  Every person who, under color of state law, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.  Under 42 U.S.C. § 1983, a plaintiff must allege (1) that an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) that the act or omission was committed by a person acting under color of state law. Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995).

For a defendant's actions to be fairly attributable to the state, "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . .  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."  Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (quotation omitted).  An otherwise private person acts under color of state law when he is "a willful participant in joint action" with a state actor.  Id. at 1133 (quotation omitted).  In this respect, the plaintiff must "plead in detail, through reference to material facts, the relationship or nature of the conspiracy" between the private person and the state actor.  Id.  It is insufficient

14

to "merely string together" discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights. Id.

Section 1985 does not itself create any substantive rights, but serves as a vehicle for vindicating specific federal rights and privileges defined elsewhere. Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979). Under the first clause of § 1985(2), a plaintiff must allege: (1) a conspiracy; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a United States court; (3) that results in injury to the plaintiff. Morast v. Lance, 807 F.2d 926, 929–30 (11th Cir. 1987). Here, "the concept of deterrence must include some indication . . . that a threat or act of intimidation was related to Plaintiff's planned testimony." Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1272 (11th Cir.), rev'd on other grounds, 314 F.3d 541 (11th Cir. 2002) (en banc).

Relatedly, under § 1986, the plaintiff must allege that a person had knowledge of a conspiracy in violation of § 1985 and, despite having the power to prevent or aid in preventing the violation, neglected or refused to do so. 42 U.S.C. § 1986; Park v. City of Atlanta, 120 F.3d 1157, 1159 (11th Cir. 1997). Where there is no underlying conspiracy to support a § 1985 claim, the derivative § 1986 claim must also fail. Farese v. Scherer, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003); Park, 120 F.3d at 1159–60.

15

In the counts alleging violations of §§ 1983, 1985, and 1986, Higdon repeatedly lists actions that Moore purportedly has taken against him, but the allegations are so unclear, cluttered, and repetitive that we are unable to conclude that they state any claim for relief. Thus, for example, we fail to see how Higdon's § 1983 claims allege violations that were taken under color of state law, nor how his §§ 1985 and 1986 claims allege any connection to testimony in federal court. As a result, we affirm the district court's dismissal of the remaining § 1983 counts found in Part A of Section II, the § 1985 counts found in Part D of Section II, and the § 1986 counts found in Part E of Section II.

D.

The only claims left in Section II are state law claims against Moore found in Part F. The district court declined to exercise supplemental jurisdiction over these claims. This decision is wholly consonant with the Supreme Court direction to lower federal courts to avoid, "[n]eedless decisions of state law," especially when federal claims are dismissed before trial. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002) (citing 28 U.S.C. § 1367(c) (3)). Accordingly, we affirm the dismissal of the state law counts found in Part F against Moore. However, nothing in this ruling bars Higdon from pursuing his state law claims in state court.

E.

The counts found in Part D of Section IV -- all of which are brought only against Judge Tusan under 42 U.S.C. § 1983 -- are barred by the statute of limitations. All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations for personal injury claims in the state where the action is brought. Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008). The same statute of limitations applies to claims brought under § 1985. Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). The governing limitations period in Georgia is two years. Crowe, 528 F.3d at 1292; O.C.G.A. § 9-3-33. The statute of limitations does not begin to run until the facts that would support a cause of action are apparent, or should be apparent, to a person with a reasonably prudent regard for his rights. Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006).

The causes of action Higdon alleged in Part D of Section IV were supported by adverse rulings in his divorce case that occurred between June 21, 2010 and January 10, 2013, and an interview that Higdon allegedly learned of on February 29, 2012. Because he did not bring suit until January 29, 2015, those claims are barred by the statute of limitations, and, therefore, we affirm the district court's dismissal of all counts found in Part D of Section IV against Judge Tusan.

## F.

Further, we affirm the dismissal of all of the defendants named in the counts found in Section VI, in which Higdon alleges constitutional violations stemming

17

from Fulton County's lack of policies concerning guardian ad litems, the judicial recusal process, and judicial training.  For starters, the counts lodged against Judge Tusan, Judge Wright, and Commissioner Eaves were properly dismissed on the ground that individual defendants should not be named in claims brought under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Under Monell, municipalities and other local government entities are "persons" within the scope of § 1983.  Id. at 690.  Because local government units can be sued directly -- and because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent -- there is no need to bring official capacity actions against local government officials as well.  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).  Thus, officers sued in their official capacity should be dismissed, as keeping suits against both the municipality and the officers plainly would be redundant.  See id.

Since Judge Tusan, Judge Wright, and Commissioner Eaves are named only in their official capacities as policy makers for Fulton County in this section of the complaint, any suit against them is essentially a suit against Fulton County.  As a result, leaving those three individuals as named defendants is redundant and unnecessary, and we affirm the dismissal of each of them.  See id.; Trotter, 535 F.3d at 1291.  Additionally, Counts 1 and 4, 2 and 5, and 3 and 6 were largely identical except for the named defendants in each count.  Counts 1, 2, and 3 named

18

Fulton County and Judges Wright and Tusan as defendants, and Counts 4, 5, and 6 named Fulton County and Commissioner Eaves as defendants.  Eliminating those three named defendants from these counts renders Counts 4, 5, and 6 redundant, and thus we affirm the dismissal of those counts on that ground.  See Trotter, 535 F.3d at 1291.

G.

As for the claims found in Section VI against Fulton County, only municipal officers or groups who have final policymaking authority may subject a municipality to § 1983 liability.  Campbell v. Rainbow City, 434 F.3d 1306, 1312 (11th Cir. 2006).  To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

The Georgia Constitution states that the governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law.  Ga. Const. art. IX, § 2, ¶ I(a), (b).  This power does not extend to actions affecting any court or the personnel thereof.  Ga. Const. art. IX, § 2, ¶ I(c)(7).  Rather, actions affecting courts or court personnel

shall be the subject of general law or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under the Georgia Constitution. Ga. Const. art. IX, § 2, ¶ I(c).

Higdon has alleged that the Fulton County Board of Commissions has authority to regulate the Fulton County Superior Court, and that they have delegated that authority to the judge serving as the chief justice of that court. However, the local county has no control over the courts or court personnel. See Ga. Const. art. IX, § 2, ¶ I(c)(7). As a result, Fulton County does not have final policymaking authority over the courts and cannot be subject to § 1983 liability in relation to the courts' actions. See Campbell, 434 F.3d at 1312. Accordingly, we affirm the district court's dismissal of the remaining counts found in Section VI on this basis. See Trotter, 535 F.3d at 1291.

## VI.

In short, we affirm the dismissal of all of the counts found in the amended complaint. Higdon suggests, however, that he should have been permitted to amend his complaint. We disagree. It is true that a district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires. Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988). Unless there is a substantial reason to deny leave to amend, the discretion of the district

court is not broad enough to permit denial. Id. The same standard applies when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e). Id. It is also true that plaintiffs typically should be allowed to file a second amended complaint when the plaintiffs only have amended their complaint once as a matter of course, have not employed delaying tactics, and have indicated that, if given the chance to amend, they will meet the pleading requirements. See Bryant v. Dupree, 252 F.3d 1161, 1163–64 (11th Cir. 2001). However, the district court need not grant leave to amend where amendment would be futile. Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). Amending a complaint would be futile if the complaint, as amended, would still be subject to dismissal. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

Filing a motion usually is the proper method to request leave to amend a complaint. Fed. R. Civ. P. 7(b)(1) provides that "[a] request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." "A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (citing Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be

allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.")).

Higdon first filed a complaint in this case in January 2015, and filed an amended complaint as of right in April 2015. He did not seek to amend his complaint again following the filing of the defendants' motions to dismiss in May 2015; instead, once the district court dismissed the amended complaint, he filed a Rule 59(e) motion and, in that motion, mentioned that he should be granted leave to amend the complaint (but did not attach the amendment or set forth the substance of the proposed amendments), and the district court denied the Rule 59(e) motion in full. After we remanded to the district court for a more detailed explanation of its rulings, Higdon did not make any filings in district court, and after the district court, following our instructions, dismissed once more, Higdon again appealed to this Court. In his brief on appeal, Higdon argued that the district court erred in dismissing his complaint as a shotgun pleading and for failure to state claim, but never argued that the district court erred in dismissing his amended complaint as futile, nor did Higdon say what, if any, amendations he would make to his complaint.

Throughout this entire procedural history, Higdon has failed to properly request leave to amend even though he had multiple opportunities to do so, and he never has indicated to the district court nor to this Court how he would amend the

current complaint in order to comply with the Federal Rules of Civil Procedure. On this record, Higdon has given us no reason to believe that a more carefully drafted complaint could state a claim, and we conclude that the district court properly denied him leave to amend based on futility.

**AFFIRMED.**